OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Darlene K. Clements, et al, ("Darlene") filed November 6, 2006. Darlene appeals the October 26, 2006 "Judgment Entry Adopting Magistrate's Decision Filed on August 8, 2006 (with Modifications)." On August 8, 2006, following a hearing, the Magistrate granted in part and denied in part the three motions for summary judgment of defendants Steven and Sandra McMahan, Doug and Tawana Cavicchioni, and Alburt and Carolyn Mayhew. Clements filed her Objections on August 21, 2006.
 {¶ 2} On October 28, 2005, Clements filed a Complaint for Specific Performance and other Equitable Relief against the defendants, alleging that "on or about February 15, 1999 she and Delbert W. Clements, deceased, entered into an oral agreement to lease a 1.555 Acre Parcel of real estate located in Sugarcreek Township, Greene County, Ohio which is a portion of the 7.230 Acre Tract conveyed to Defendants Alburt and Carolyn H. Mayhew by deed recorded in the Official Deed Records of Greene County Ohio Volume 903 Page 649 for a term of 99 years renewable in perpetuity." According to Darlene, "[i]n part performance of the agreement to so lease, Plaintiff and Delbert W. Clements, Deceased, occupied the premises, made substantial improvements thereto by erecting a pole barn thereon, and made monthly payments to Defendants Alburt C. and Carolyn H. Mayhew or their nominees in the amount of $874.99 plus real estate taxes." Clements asserted that "The monthly lease payments are to cease February 28, 2006 and said lease *Page 3 
was to have been paid up in full." Darlene's husband died September 8, 2005.
 {¶ 3} Delbert W. Clements, doing business as "Floats and More," contracted with the Dayton Holiday Festival, on September 24, 1998, to store floats which were used in the Dayton Holiday Festival Annual Children's Parade. The floats were stored in the pole barn on the property at issue.
 {¶ 4} On September 26, 2000, the Mayhews conveyed equitable title to the entire 7.230 acre tract to the Cavicchionis by land contract. On September 16, 2005, several conveyances occurred. First, the Mayhews conveyed the entire 7.230 acres to the Cavicchionis in fee simple. Second, the Caviccionis conveyed the 7.230 acres to Thomas Swope. Then, Swope conveyed the 7.230 acres to the McMahans. Lastly, on the same date, the McMahans conveyed the 7.230 acres to First National Bank, by open end mortgage. Darlene alleged that all parties were on notice of the oral lease agreement between the Mayhews and the Clements and of the Clements' interest in the 1.155 acre parcel.
 {¶ 5} The McMahans argued that they were entitled to summary judgment because the Clements breached the alleged oral agreement by failing to make monthly payments, and the McMahans asked the court for an order quieting title to the 7.230 acres in them. They served a three-day notice to leave the premises on Darlene on January 25, 2006 and asked the court for a writ of restitution.
 {¶ 6} The Cavicchionis adopted the McMahans' motion for summary judgment by reference and argued additionally that an oral lease for monthly payments is a month-to-month lease, and that Darlene's right of possession was terminated because she was in default of the rental obligation. The motion stated that Mr. Cavicchioni sent written notice *Page 4 
by certified mail on October 3, 2005, to Darlene that "the verbal agreement will end on Saturday, December 31, 2005."
 {¶ 7} The Mayhews adopted by reference the McMahans' and the Cavicchionis' motions for summary judgment, and they also argued that Darlene "has not made any allegations that would allow the alleged renewable 99 year lease the benefit of an exception to the Statute of Frauds, and therefore, all that the Decedent possessed was a periodic tenancy that terminated when Mr. Cavicchioni informed him the lease was to terminate."
 {¶ 8} The Magistrate set forth undisputed facts which established the relevant history of the Mayhews', Cavicchionis' and McMahans' ownership of the 7.230 acres as set forth above. One such undisputed fact was that Darlene and Alburt Mayhew incorrectly cited to Vol. 903, Page 649 of the land records of Greene County, Ohio for the instrument of conveyance to the Mayhews of the 7.230 acre tract of property at issue, and that the correct cite is Vol. 1332, Page 121. The Magistrate also noted several facts that were in dispute.
 {¶ 9} The Magistrate set forth the following conclusions of law based upon facts that were not in dispute:
 {¶ 10} (1) "Plaintiff Clements does not have, and she and her husband never had a 99-year lease of the 1.155 acres including the pole barn constructed on that property."
 {¶ 11} (2) "Plaintiff Clements argues, but has not proven that `part performance' has occurred so as to remove the alleged 99-year lease from the operation of the Statute of Frauds."
 {¶ 12} (3) "Clements had a month to month lease with the Mayhews for the 1.155 *Page 5 
acres and the pole barn constructed thereon."
 {¶ 13} (4) "Clements' oral month-to-month lease with the Mayhews began at some time in 1999, continued with the Mayhews until September 16, 2005, and passed, in turn, from the Mayhews to the Cavicchionis, to Thomas Swope, Trustee, and to the McMahans, all on September 16, 2005, and has not been properly terminated as a matter of law."
 {¶ 14} The Magistrate quieted title to the 7.230 acres in the McMahans, subject to their mortgage. The Magistrate further determined that Darlene has a month-to-month lease with the McMahans for the 1.155 acre tract upon which the pole barn is constructed, because the oral month-to-month lease with the Mayhews, the Cavicchionis, Mr. Swope, and lastly with the McMahans, was never terminated. The Magistrate determined that, pursuant to the land contract between the Mayhews and the Cavicchionis, the Mayhews retained sole use of the pole barn, and that the McMahans' purported lease of the 1.155 acres to the Cavicchioinis (after the September 16, 2005 transfer of the 7.230 acres from the Mayhews to the Cavicchionis to Thomas Swope to the McMahans) was invalid because the Mayhews never terminated the month-to-month lease with the Clements. Accordingly, the Cavicchionis' termination of the lease with the Clements was ineffective; the lease ran with the land and was between the Clements and the McMahans. Further, the McMahans' termination of the lease was ineffective because the basis for the termination was the Clements' failure to pay rent during a time period in which the McMahans were not entitled to receive rent, prior to September 16, 2005. The Magistrate also determined that the McMahans' notice of termination was ineffective because it did not contain the mandatory language of R.C. 5313.06, which requires a ten day period to cure default. The Magistrate granted that portion of the Cavicchionis' and the Mayhews' motions for summary judgment *Page 6 
which sought dismissal of Darlene's claim that she holds a 99-year lease renewable in perpetuity for the 1.155 acres which includes the pole barn.
 {¶ 15} Darlene filed eight objections to the Magistrate's Decision. The trial court conducted an independent review, de novo, which included the defendants' motions for summary judgment and all related filings, as well as all affidavits. Darlene's objections, and the court's rulings thereon, are set forth below.
 {¶ 16} (1). "The Magistrate wrongly required Plaintiff to PROVE her case."
 {¶ 17} The court determined that Darlene did not meet the summary judgment standard, with "the modification to the Magistrate's Decision that the Court agrees with Plaintiff that Plaintiff did not have to `prove' her case." The court considered "the two affidavits of Plaintiff, the other affidavits, including those of Albert Mayhew, and Plaintiff's lack of rebuttal of the Mayhew affidavits, [and] the Court concluded Plaintiff did not set forth `facts' showing that there was a 99 year old lease renewable in perpetuity or that part performance removed the alleged lease from operation of the Statute of Frauds." The court further agreed with the Magistrate that "Plaintiff's deed volume and page references are wrong, making that part of Plaintiff's seminal averment plainly wrong."
 {¶ 18} In Darlene's first affidavit, she stated that "on or about February 15, 1999, she and Delbert W. Clements, deceased, entered into an oral agreement to lease" the subject 1.155 acres with the Mayhews for a term of 99 years renewable in perpetuity. Alburt Mayhew filed affidavits in response. In one affidavit, Mayhew stated that he had "never met or known the Plaintiff, Darlene Clements, until the May 26, 2006 Court hearing in front of the Magistrate." The court determined that "Plaintiff never submitted an affidavit rebutting that fact." According to the court, "the law does not require a prolonged trial to *Page 7 
conduct fact-finding to determine whether or not Clements had an oral 99 year lease, renewable in perpetuity, with Mayhew, when Clements left unrebutted the affidavits of Mayhew that make such a 99 year oral lease, renewable in perpetuity, an impossibility."
 {¶ 19} The court further took judicial notice of Darlene's application for authority to administer the estate of her deceased husband, filed November 1, 2005 in probate court. Darlene indicated a value of zero for real property in Delbert's estate, and the court determined, "If Darlene Clements actually believed that she and her husband had the equivalent of a fee simple estate in a 99 year lease, renewable in perpetuity, Darlene Clements would have listed that real property interest value of her husband's estate on her Application." The court determined that Darlene was "judicially estopped from taking contradictory positions in the Probate Division and the General Division of this Court."
 {¶ 20} (2) "The Magistrate ignored uncontroverted evidence of the Plaintiff."
 {¶ 21} Michelle Clements, Darlene's daughter, stated in an affidavit that Mayhew told Delbert that "the property, including the finished pole barn, would be leased to affiant's late father and affiant's mother, * * * for 99 years renewable for one dollar. Mr. Mayhew was to be paid a sum equivalent to what the Dayton Holiday Festival was paying affiant's mother * * * for providing floats for the Annual Dayton Holiday Children's Parade." The affidavit further provided that "Mr. Mayhew funded a portion of the construction costs for the pole barn and the number of payments owed to Mr. Mayhew was calculated by Mr. Mayhew to repay the costs of construction paid by him and what Mr. Mayhew calculated to be the value of the land upon which the pole barn was located." According to Michelle, "Mr. Mayhew repeatedly stated that when the payments were completed, my late father and mother would `own' the barn and the property." Finally, "Mr. Mayhew frequently stated his *Page 8 
intention to have a written lease prepared, but Affiant never saw such a document." Michelle also stated that the original contractor who was hired to build the pole barn quit and that her late father "negotiated with members of the original contractor's crew to complete the construction." According to Michelle, she observed her late father "pay wages, motel bills, and some food expenses to the crew which built the pole barn in cash from his pocket to keep them working on the construction job."
 {¶ 22} The trial court determined that, since Michelle never saw the lease, "the Michelle Clements affidavit does not establish that an oral 99 year lease ever existed." Further, Michelle acknowledged that Mr. Mayhew paid for a portion of the pole barn construction. In one affidavit, Mayhew stated, "I am the individual who provided funds for the building of the building on the property." The court noted that Darlene provided no receipts "for material or work that was actually installed in the pole barn," and the court determined that "Mayhew's statement is not rebutted by any affidavit of Plaintiffs."
 {¶ 23} (3) "The Magistrate improperly weighed evidence and construed it in favor of the movants Mayhew."
 {¶ 24} Darlene argued that the court ignored the contents of the affidavit of Ron Dowell, ignored Clements averment regarding "a payoff statement indicating the balance due on the purchase of the leasehold interest," and that the court erroneously construed the payments to the Mayhews and Cavicchionis as rent.
 {¶ 25} Ron Dowell's affidavit provides that "in 1999 he provided labor to Delbert W. Clements for the construction of a pole barn" in Greene County. Dowell stated that, "On multiple occasions during the construction process Alburt C. Mayhew visited the job site and had conversations with Delbert W. Clements which affiant witnessed." The affidavit *Page 9 
goes on to state, "During the course of more than two of the conversations, Alburt C. Mayhew made reference to the fact that the pole barn because it belonged to Delbert Wayne Clements under a 99 year lease." The trial court determined that Dowell's affidavit "Does not establish that there was a 99 year oral lease or that, if there were such a lease, the affidavit does not establish part performance to remove the alleged 99 year lease from operation of the Statute of Frauds."
 {¶ 26} As to the alleged "statement of account," the court noted, "What Plaintiff refers to as a `statement of account' in her objection, in her second affidavit, Plaintiff called a `payoff statement' concerning interest, taxes, and insurance that Mayhew prepared." Darlene's' second affidavit stated that the attached document was "a true and accurate payoff statement indicating the balance due on the purchase of the leasehold interest by Delbert W. Clements and myself in the property which is the subject of this suit. Albert W. Mayhew personally prepared the statement in 2001 which indicated the charges for interest, taxes, insurance and the balance due to the purchase money loan as of July 25, 2001." The document at issue indicates payments received and the subsequent new balances due from March 15, 2001 until July 25, 2001.
 {¶ 27} In one affidavit, Mayhew identified the document as "nothing more than an internal record of mine as to monies I have invested in the building and property and my return thereof through and for the barn I constructed." The court concluded that the affidavits did not establish that there was a 99 year oral lease or that, "if there were such a lease, the affidavits [did] not establish part performance to remove the alleged 99 year lease from operation of the Statute of Frauds."
 {¶ 28} (4) "The Magistrate excluded evidence which should have been construed *Page 10 
against the movants Mayhew."
 {¶ 29} Clements argued that the Magistrate wrongly excluded averments in her affidavit as hearsay. The court determined, "As to hearsay statements by Darlene Clements, Plaintiff avers that she entered into an oral 99-year lease in 1999 with Mayhew, an individual who testified by affidavit he did not meet Darlene Clements until May 26, 2006. Darlene Clements did not rebut Mayhew's statement in her Supplemental Opposition."
 {¶ 30} Darlene argued that, if the "statement of account" discussed above "were truly a calculation of `return on investment,' the balance would increase steadily not decrease." The court noted that it had already ruled above on the objections pertaining to the alleged "statement of account."
 {¶ 31} Finally, Darlene argued that the Magistrate wrongly excluded the affidavit of Michelle Clements. The trial court did not address Michelle's affidavit in response to this objection, presumably because it had already done so in response to Darlene's second objection. The court went on to note that "Darlene Clements attached to her second affidavit an alleged `contract' that Mrs. Clements' late husband signed to purchase 48 steel arches that Plaintiff averred were for the pole barn on the property. The document does not state a location for the delivery of the steel arches.
 {¶ 32} "An unrebutted responsive affidavit of Alburt Mayhew states that there is no steel in the pole barn on the property in this Case. Darlene Clements' referenced contract for 48 steel arches could not have been a `contract' related to the pole barn constructed on the 1.155 acres at issue in this Case."
 {¶ 33} (5) "The Magistrate fact (sic) that the Statements of Account * * * were *Page 11 
sufficient to satisfy Ohio's Statute of Frauds."
 {¶ 34} Darlene directed the court's attention to the "statement of account" discussed above and other similar documents which also record payments received and a diminishing balance. The trial court concluded that, interpreted "in favor of Plaintiff they do not even present a genuine issue of fact, related to whether there was a 99 year lease, renewable in perpetuity as claimed by Plaintiff."
 {¶ 35} (6) "The doctrine of part performance does not require that Ms. Clements have proved that Delbert W. Clements and/or she PAID for the entire construction costs of the pole barn."
 {¶ 36} The court ruled that "the affidavits interpreted in a light most favorable to Plaintiff, do not establish part performance by the Clements to remove the alleged 99 year lease from operation of the Statute of Frauds."
 {¶ 37} (7) "Defendants cannot avoid specific performance of the agreement to lease the property because Mayhew did not own it when the deal was struck."
 {¶ 38} In response, the court sustained "this objection finding that the date of February 15, 1999 [when Darlene alleges that she and Delbert entered into the oral lease with Mayhew] is not controlling in this Court's conclusion that Plaintiffs' affidavits do not establish that there existed a 99 year oral lease between the Plaintiff Clements and Defendant Mayhew or that, if there were such a lease, the affidavits do not establish part performance to remove the alleged 99 year lease from operation of the Statute of Frauds."
 {¶ 39} (8) "The Magistrate never addressed the equitable issues in this case."
 {¶ 40} In response, the court concluded "that the Court has balanced the equities of the Parties in GRANTING the three Motions for Summary Judgment and in adopting the *Page 12 
Magistrate's decision with the modifications noted herein."
 {¶ 41} The McMahans filed a limited objection to the Magistrate's decision, arguing that they properly terminated the month-to-month oral lease, and asserting that they served Darlene with a new notice to leave the premises. The trial court affirmed the Magistrate's decision that the January 25, 2006 Notice to leave the premises was not effective but that it would have properly terminated the lease if the McMahans were entitled to receive rent for the period prior to September 16, 2005. The court determined that R.C. 5313.06 only applies to land contracts, and Darlene accordingly was not entitled to the ten-day period to cure the default that R.C. 5313.06 requires. The court further determined that the McMahans' subsequent Notice to leave the premises served on Darlene on August 11, 2006 properly terminated the lease.
 {¶ 42} Darlene asserts five assignments of error. Darlene's first assignment of error is as follows:
 {¶ 43} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY OVERRULING PLAINTIFF'S OBJECTION TO THE MAGISTRATE'S FAILURE TO FIND THAT STATEMENTS OF ACCOUNT ISSUED BY APPELLEES ALBURT MAYHEW AND DOUG CAVICCHIONI WERE SUFFICIENT TO SATISFY OHIO'S STATUTE OF FRAUDS. (ORC § 1335.04).
 {¶ 44} ?`Our review of the trial court's decision to grant summary judgment is de novo. (Internal citations omitted). Civ. R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material facts (2) the moving party is entitled to judgement as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but *Page 13 
one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. (Internal citations omitted). The moving party `bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.' (Internal citations omitted). If the moving party satisfies its initial burden, `the nonmoving party then has a reciprocal burden * * * to set forth facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.'" Bridewell v. Dayton Foods Ltd.Partnership, Montgomery App. No. 21623, 2007-Ohio-3156.
 {¶ 45} Mayhew and the Cavicchionis argue that Clements did not object to the Magistrate's conclusions that (1) the lease was oral, (2) the rent was payable monthly, and (3) the tenancy was therefore month-to-month, and that her failure to object thereto results in a waiver of her right to assign the trial court's adoption of the Magistrate's conclusions as error herein, pursuant to Civ. R. 53. "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ. R. 53(D)(3)(b)." Civ. R. 53(D)(3)(b)(iv).
 {¶ 46} We do not agree with the argument of Mayhew and the Cavicchionis that Darlene has waived the errors she asserts herein. The Magistrate determined that there was no evidence of a 99-year lease, that there was an absence of partial performance to take the agreement outside of the Statute of Frauds, and that the statements upon which *Page 14 
Clements relied did not satisfy the Statute of Frauds. Clements objected, claiming she had she set forth facts showing a genuine issue for trial "whether she and her husband had a 99 year lease on the property," and that the statements upon which she relied were sufficient to satisfy the Statute of Frauds, and that she established part performance.
 {¶ 47} There being no waiver, we will now address the merits of Darlene's first assignment of error. Pursuant to the Statue of Frauds, "No lease, estate, or interest either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law." O.R.C. 1335.04. "No action shall be brought whereby to charge the defendant * * * upon a sale of lands, tenements, or hereditaments, or interest in or concerning them, or upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person therunto by him or her lawfully authorized." R.C. 1335.05.
 {¶ 48} "The writing requirement of the Statue of Frauds advances important public policy goals. (Internal citations omitted). Primary of these goals is the public desire to protect the integrity of real estate transactions because they `are often susceptible of gross exaggeration and even perjury on the part of the alleged promisee.' (Internal citation omitted). The large sums of money involved in realty transactions, together with the possible abuse of third party interests and the potential for fraud, require that such transactions `[be] commemorated with sufficient solemnity.' (Internal citation omitted).
 {¶ 49} "In the realm of real estate transactions, a memorandum of an oral agreement *Page 15 
satisfies the Statute of Frauds if it (1) identifies the subject matter of the transaction, (2) establishes that a contract has been reached, and (3) states the essential terms of the agreement. (Internal citations omitted). If the writing does not contain words which can reasonably be construed as words of promise or agreement, the writing is not a memorandum for purposes of the Statute of Frauds." Lacy v. Adair (Nov. 22, 1989), Greene App. No. 89 CA 0018.
 {¶ 50} "Since early in Ohio legal history, it has been held that a defectively executed lease is invalid and does not operate to convey the estate or create the term of leasehold sought to be created thereby."Delfino v. Paul Davies Chevrolet, Inc. (1965), 2 Ohio St.2d 282, 284,209 N.E.2d 194. ?`A defectively executed lease for a term of * * * years upon monthly rental creates a tenancy in the lessee from month to month.'" Id., quoting Wineburgh v. Toledo Corporation (1932), 125 Ohio St.219, 181 N.E. 20.
 {¶ 51} We agree with the trial court that Darlene's evidence is insufficient to satisfy the statute of frauds. The documents Darlene relies upon do not constitute a "deed, or note in writing, signed by the party assigning or granting" a lease. The "statements" do not identify the subject matter of the transaction; they do not identify the 1.155 acre parcel of land in Sugarcreek Township upon which a pole barn is located. Documents 94-110 merely indicate payments received and a decreasing balance due, and documents 112-113, entitled "Barn Payment and Land Lease" also show payments received and a declining balance. The documents do not establish that a contract for a 99 year lease has been reached. Further, the statements do not provide the essential terms of any agreement between the parties for a 99 year lease renewable in perpetuity. The statements merely indicate receipt of payments, including real estate taxes, and a diminishing balance due to *Page 16 
the Mayhews and then the Cavicchionis. They do not, however, contain words of promise or agreement. Accordingly, the trial court correctly concluded the alleged "statements" do not satisfy the Statute of Frauds, and Darlene's first assignment of error is overruled.
 {¶ 52} We will next address Darlene's fourth assignment of error, which is as follows:
 {¶ 53} "THE TRIAL JUDGE COMMITTED PREJUDICIAL ERROR BY REQUIRING MRS. CLEMENTS TO PRODUCE DOCUMENTARY EVIDENCE TO SHOW THAT SHE AND WAYNE CLEMENTS MADE IMPROVEMENTS TO THE PROPERTY IN ORDER TO AVAIL THEMSELVES OF THE DOCTRINE OF PART PERFORMANCE.
 {¶ 54} "A. The record does contain sufficient documentary evidence to demonstrate that the Clementes [sic] were primarily liable for the construction of the pole barn.
 {¶ 55} "B. The record contains an invoice made out to D. Wayne Clements.
 {¶ 56} "C. No appropriate inference is raised to suggest that Mayhew paid for the pole barn in its entirety.
 {¶ 57} "D. The record demonstrates that D. Wayne Clements made improvements to the property independently of any financing by Alburt Mayhew."
 {¶ 58} "In order to remove a contract from the operation of the statute of frauds pursuant to the doctrine of part performance, the party that is relying on the agreement must have undertaken `unequivocal acts * * * which are exclusively referable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties in statu[s] quo.' (Internal citation omitted). Thus, a party seeking to establish part performance must demonstrate that he has performed acts in exclusive reliance on the oral contract and that such acts have changed his position to his prejudice. In cases involving real estate contracts, courts have required acts such as *Page 17 
possession, payment of consideration, and improvements on the land in order to find part performance of the contract." Stickney v.Tullis-Vermillion, Clark App. No. 2004 CA 83, 2006-Ohio-842; Lowe v.Phillips, Montgomery App. No. 20590, 2005-Ohio-2514 (holding that part performance was established where a tenant proved he had possession of the property, paid additional money monthly above the initial rental amount agreed upon once the parties entered into a lease with option to purchase agreement, spent time, labor and money repairing and improving the property, including replacing drywall and studs, installing ceramic tile, painting and wallpapering, removing large amounts of trash and debris, leveling the land, repairing the roof, replacing an air-conditioning unit, and wiring the pole barn with electricity so it could be used at night).
 {¶ 59} Darlene Clements relies upon a "proposal/contract" dated February 19, 1999, signed by D. Wayne Clements as the "owner" and Gary Freeman/Post Frame Buildings as the "contractor" The contract provides that payment of the $29,600.00 contract sum was to be paid as follows: "10% down payment when ordering, 1/3 when laid out, holes, pads, poles are up, 1/3 when completely ready to truss, 1/3 when complete."
 {¶ 60} Mayhew's second affidavit provides that the contract "is a proposal of a Mr. Freeman who walked off the job, he was never hired by me, and was not paid by Wayne Clements. Mr. Freeman did not do the work. There are no checks to Gary Freeman for building this barn. There are no checks showing Gary Freeman was involved other than possibly a down payment which has never been shown."
 {¶ 61} Mayhew's affidavit provides that "While he owned the land, he financed the construction of the pole barn." Darlene's brief states, "the first balance on a statement (Doc. 110) issued a year after the deal was struck is $35,881.55 and interest was charged *Page 18 
to the Clementses on the balance as it declined. Construing the evidence most strongly in favor of Mrs. Clements, the only rational conclusion which can be drawn from Mayhew's statement and the invoices is that Mayhew did indeed finance the construction of the pole barn advancing funds and billing the Clements for the purchase of the leasehold on the combination of both the barn and the 1.155 acres of land."
 {¶ 62} Attached to Alburt Mayhew's motion for summary judgment are 14 checks, over a period of time from January 8, 2004 until June 30, 2005, made out to Albert Mayhew, the first of which is in the amount of $1749.98, and the remainder of which are in the amount of $874.99, the amount Darlene alleged she and her husband agreed to pay the Mayhews monthly. The checks are drawn on the account of the Dayton Holiday Festival. Mayhew's affidavit states that the checks made out by the Dayton Holiday Festival were "for payment for rent on the land and pole barn." In her first affidavit, Darlene states that initially, the Dayton Holiday Festival paid Clements, who then paid Mayhew, but in "later years, Delbert Clements became too ill to efficiently manage the banking and transfer of funds for the payments on the leasehold interest in the property and Delbert W. Clements instructed the Holiday Festival to make the checks payable to Alburt C. Mayhew."
 {¶ 63} Also attached to Mayhew's motion for summary judgment are several receipts for materials including as follows: two from Ernst Enterprises, for concrete, listing Al Mayhew as the customer; one from Woodsfield True Value Home Center, for materials, sold to "cash" and shipped to Gary Freeman; four from the Kinney Hochstetler Lumber Company, for materials, including 27 sixty-inch trusses sold to "Gary Freeman/ Al Mayhew," one from the Kinney Hochstetler Lumber Company, for materials, sold to "cash" and shipped to Al Mayhew; and one for "dozer" work made out to Al Mayhew. Mayhew asserts *Page 19 
that they are "true and accurate copies of the receipts Mr. Mayhew received for construction of the pole barn."
 {¶ 64} Also attached to the Mayhews' motion for summary judgment is a job work order from Orbit Movers and Erectors, Inc. indicating the job name and location as "Floats and More Inc. — Wayne Clemons," indicating that the work was ordered by "Wayne C." and that the invoice was billed to "Post Frame Buildings." The order is for a crane operator to hoist 27 sixty-inch trusses. According to Darlene, "This invoice, in and of itself is sufficient to satisfy the issue of making improvements."
 {¶ 65} Having reviewed all of the evidence in the record, and construing the evidence most strongly in favor of Darlene, we find that a genuine issue of material fact exists as to whether part performance removed the purported oral lease from the Statute of Frauds. While Mayhew argues that Gary Freemen walked off the job and was not paid by him or Clements, the invoices and work orders bear Freemen's name into May, three months after the contract between Freemen and Wayne was signed, suggesting that the contract was at least partially executed. In fact, by the terms of the contract, over two thirds of the balance was due when the project was "completely ready to truss," and the work order to hoist the trusses was billed to Freemen's company, Post Frame Buildings. The contract refers to "Mr. Wayne Clements" as the "owner."
 {¶ 66} Further, Doug Cavicchioni prepared a document entitled "Barn Payment and Land Lease" (document 112) which indicates the receipt of the following three payments. On May 23, 2005, there was a balance due of $8000, and a payment of $875.00 was received. The document indicates that $366.00 of that amount was a tax payment, that one dollar of the amount was a "land lease" payment and that $509.00 of the amount was a *Page 20 
"barn payment." The ending balance is $7490.00. On June 30, 2005, a payment of $875.00 is indicated, with $366.00 allocated for taxes, one dollar allocated for the "land lease," and $509.00 allocated for the "barn payment," with an ending balance of $6980.00. Finally, on July 6, 2005, a payment of $875.00 is indicated, with one dollar allocated for the "land lease," and $874.00 designated as "barn payment," with an ending balance of $6106.00.
 {¶ 67} A genuine issue of material fact exists as to the nature of the payments Clements made to Mayhew and Cavicchioni pursuant to Clements' agreement with Mayhew. We note that payment of real estate taxes is consistent with property ownership and not monthly tenancy. Also, Cavicchioni's document suggests that a portion of the payments constituted repayment for the cost of the barn. If Clements agreed to absorb the entire cost of the pole barn construction, the doctrine of part performance may apply. Bearing the cost of the improvement is an act referable to the alleged oral lease. Further, the affidavit of Michelle Clements, the Clements' daughter, states that she "personally observed her late father pay wages, motel bills, and some food expenses to the crew which built the pole barn in cash from his pocket to keep them working on the construction job." It is for the jury to decide whether Clements acted in exclusive reliance on the oral contract, changing his position to his prejudice. Because a genuine issue of material fact exists regarding the doctrine of part performance, Darlene's fourth assignment of error is sustained.
 {¶ 68} Darlene's second, third and fifth assignments of error are as follows:
 {¶ 69} "THE TRIAL JUDGE COMMITTED PREJUDICIAL ERROR BY WEIGHING THE EVIDENCE AND MAKING CREDIBILITY DETERMINATIONS IN CONCLUDING *Page 21 
THAT THE MAGISTRATE DID NOT WRONGLY REQUIRE MRS. CLEMENTS TO `PROVE' HER CASE BY SUMMARY JUDGMENT.
 {¶ 70} "A. The trial judge erroneously required Mrs. Clements to `prove' the `right deed' reference for the property.
 {¶ 71} "B. The trial judge erroneously required Mrs. Clements to prove that she had a personal face to face meeting with Alburt Mayhew to conclude the deal.
 {¶ 72} "C. The trial judge interpreted the Affidavit of Michelle Clements AGAINST, not in favor of Mrs. Clements."
 {¶ 73} And,
 {¶ 74} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY TAKING JUDICIAL NOTICE OF FILINGS IN THE PROBATE COURT AND MISAPPLYING THE CONCEPT OF JUDICIAL ESTOPPEL TO THOSE FILINGS.
 {¶ 75} "A. The Probate filings were improperly considered new evidence.
 {¶ 76} "B. Judicial estoppel does not apply to this situation."
 {¶ 77} And,
 {¶ 78} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY RATIFYING THE FAILURE OF THE MAGISTRATE TO BALANCE THE EQUITIES BETWEEN THE PARTIES."
 {¶ 79} Our decision regarding Darlene's fourth assignment of error renders analysis of these assignments of error moot; a genuine issue of material fact exists for trial on the issue of part performance, an exception which removes an oral contract from the Statute of Frauds. Reversed and remanded for proceedings consistent with this opinion. *Page 22 
 WOLFF, P.J. and GRADY, J., concur. *Page 1