OPINION
{¶ 1} Plaintiff-appellant, James DeAscentis, appeals from the Franklin County Court of Common Pleas' December 29, 2003 judgment entry granting defendants-appellees, Vincent J. Margello and Community Builders, Inc.'s ("appellees"), motion for partial summary judgment, denying DeAscentis' appellant's motion for summary judgment, and denying DeAscentis' motion for reconsideration or, alternatively, for clarification. He also appeals from the May 15, 2008 decision and entry denying his *Page 2 
motion for reconsideration and the May 23, 2008 agreed order of dismissal and final judgment entry.
 {¶ 2} This case has a lengthy history including an earlier appeal that was dismissed for lack of a final appealable order. DeAscentis v.Margello, Franklin App. No. 04AP-4, 2005-Ohio-1520 ("DeAscentis /"). The following facts are not in dispute for purposes of summary judgment.
 {¶ 3} DeAscentis initiated this action on January 1, 2001. DeAscentis and Margello are first cousins, and Margello is the president and sole shareholder of Community Building, Inc. In 1989 and again in 1993, Margello and DeAscentis entered into oral agreements to acquire, develop, and sell real property in connection with two condominium projects known as Sharon Woods Senior Village #1 ("SW 1") and Sharon Woods Senior Village #2 ("SW 2"). According to DeAscentis, the parties agreed to be 50-50 partners, to share equally in the profits and expenses, and for each party to receive title to five condominium units when each project was completed. At the close of SW 1, Margello decided to roll his five units and DeAscentis' five units into the SW 2 project and use the rental income to pay expenses related to the SW 2 project. At the close of SW 2, they were each then supposed to receive title to ten units, five from SW 1 and five from SW 2. Eventually appellees transferred five units to DeAscentis, but Margello kept title to 15 units.
 {¶ 4} DeAscentis filed suit claiming that he was owed profits, rental income, and unencumbered title to ten units from the two Sharon Woods projects as well as a number of other development projects in which he and Margello were involved. An additional plaintiff, Michael DeAscentis, alleged that he was owed payment for accounting services *Page 3 
he performed in connection with the projects. DeAscentis raised claims on separate theories of declaratory judgment, breach of contract, unjust enrichment, accounting and winding up, breach of fiduciary duties, conversion, fraud, and promissory estoppel.
 {¶ 5} Appellees filed a motion for partial summary judgment in which they argued that all of DeAscentis' claims with respect to SW 1 and 2 were barred by the statute of frauds and by applicable statutes of limitation. Both parties acknowledged that there was an oral agreement, although they disagreed over the terms and conditions. DeAscentis argued the agreement was a partnership, and Margello contended the agreement was an employment arrangement for which DeAscentis received compensation. The trial court acknowledged that issues of fact existed regarding the nature and terms of the agreements. The trial court found, however, that affirmative defenses raised by Margello disposed of some of the claims regardless of the nature of the agreement. Specifically, the trial court granted the motion on the basis that the statute of frauds barred DeAscentis' contract claims, and that DeAscentis' equitable claim for unjust enrichment was also barred as an alternative theory that only became viable if no contract existed. Therefore, the trial court granted summary judgment in favor of appellees on all claims related to James DeAscentis and SW 1 and 2.
 {¶ 6} DeAscentis appealed, and this court dismissed the appeal for lack of a final appealable order. This court found that the trial court's decision "left all seven of DeAscentis' legal theories, or causes of action, pending against appellees; that is, none of DeAscentis' causes of action was entirely dismissed." Id. at ¶ 21. With respect to the declaratory judgment claim, this court determined that there was no final appealable order because the claim did not affect a substantial right in that DeAscentis still had a *Page 4 
meaningful opportunity for review by way of a later appeal. Also, the court of appeals determined that the trial court's decision failed to declare the rights and obligations of the parties.
 {¶ 7} The case returned to the trial court where DeAscentis filed a motion to amend the complaint, conduct a trial on all claims, and to compel discovery. The trial court denied the motions, and DeAscentis filed a motion for reconsideration, which was denied by the trial court on May 15, 2008. The successor to the original trial judge agreed with the original decision that, because the agreement contemplated the conveyance of land and was not evidenced by a writing, the agreement was unenforceable. The successor trial court judge concluded that when the original trial court found the Sharon Woods claims were barred, he declared the rights of the parties. The trial court then recognized that the claims concerning other projects remained and would be set for trial.
 {¶ 8} On May 23, 2008, the parties filed an agreed order of dismissal and final judgment entry, in which DeAscentis dismissed all claims except those relating to the Sharon Woods projects, and the trial court entered final judgment against DeAscentis on his claims relating to the Sharon Woods projects.
 {¶ 9} This appeal followed with DeAscentis asserting the following assignments of error:
 1. The trial court erred by failing to follow the law of the case and this court's mandate in DeAscentis v. Margello, 2005-Ohio-1520, and by granting judgment to the defendants on the Sharon Woods claims.
 2. The trial court erred by granting summary judgment to the defendants. *Page 5 
 3. The trial court erred by denying discovery to plaintiffs which was essential to the partnership and other material issues and, further, by denying amendment of the complaint.
 {¶ 10} Appellees have presented for review a cross-assignment of error as follows:
 The trial court erred by failing to grant summary judgment to Appellees based upon the statute of limitations.
 {¶ 11} In his first assignment of error, DeAscentis argues that this court's decision in DeAscentis I effectively reversed the prior grant of summary judgment. DeAscentis urges that the law of the case compels the trial court to conduct a trial on all the outstanding claims including those disposed of by summary judgment, and to issue a declaratory judgment that expresses the rights, duties, and obligations of the parties.
 {¶ 12} The doctrine of law of the case provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case, both at the trial and reviewing levels. Nolan v. Nolan (1984), 11 Ohio St.3d 1,3. We review the issue of whether the law of the case doctrine applies in a particular situation as a question of law under a de novo standard.Nationwide Ins. Co. v. Davey Tree Expert Co., 166 Ohio App.3d 268,2006-Ohio-2018, at ¶ 26.
 {¶ 13} The legal question resolved in the earlier appeal was whether partial summary judgment in favor of appellees was a final appealable order. We held it was not final because none of the claims had been entirely resolved. DeAscentis I, at ¶ 21. DeAscentis, however, claims that on remand the trial court refused to follow the law of the case by ruling that the earlier grant of summary judgment was, in effect, the law of the *Page 6 
case, that it decided all claims, and that it contained a proper declaratory judgment, all in direct contravention of the court of appeals decision.
 {¶ 14} Contrary to DeAscentis' argument, the earlier appeal did not reverse the grant of summary judgment. The remaining claims or legal theories were to be tried or otherwise disposed of, and then DeAscentis would have an opportunity to appeal the partial summary judgment in favor of appellees. DeAscentis I should not be interpreted as more than a determination of whether we lacked jurisdiction for lack of a final appealable order. Once this court determined there was no final appealable order, to address the merits of the case, would have been outside of this court's jurisdiction. Section 3(B)(2), Article IV, Ohio Constitution.
 {¶ 15} In DeAscentis I, this court addressed the lack of a declaratory judgment as follows:
 * * * When it granted summary judgment to appellees on DeAscentis' declaratory judgment claim respecting the Sharon Woods Village projects, the trial court was obligated to set forth the parties' rights and obligations in connection with those projects, since this was the heart of the relief sought in DeAscentis' declaratory judgment claim. Because the court failed to do so (and perhaps could not do so because other claims for declaratory relief remained pending), and because the order does not affect a substantial right (as discussed above), the portion of the order granting partial summary judgment to appellees on the declaratory judgment claim is not a final order.
DeAscentis I, at ¶ 24.
 {¶ 16} At the outset, we note that this time the case comes to us in a different posture from the first appeal. In this appeal, all the claims that prevented a final appealable order have been disposed of. The claims that do not relate to the Sharon *Page 7 
Woods projects have been dismissed, the claims regarding Michael DeAscentis have been dismissed, the trial court has made a declaration of rights, and summary judgment has been granted on all the Sharon Woods claims. We have a final appealable order. Thus, our inquiry now must focus on the merits of the case, both the summary judgment and the declaratory judgment claim. The issue is not whether the successor judge failed to follow the law of the case; rather, the real inquiry is whether summary judgment was appropriate and whether the declaration of rights is adequate. Consequently, we find the first assignment of error not well-taken, and turn to the second assignment of error.
 {¶ 17} In its March 27, 2008 decision denying plaintiffs' motion to amend the complaint, conduct trial on all claims, and compel discovery, the trial court declared the agreement to be unenforceable without addressing the exact nature of the contract, i.e., whether it was a partnership, joint venture, or employment agreement. Nor did the trial court decide the controversy over the terms of the contract. Instead, the trial court determined that if the affirmative defense of the statute of frauds decided the question of enforceability, the trial court's declaration of unenforceability negated the need for the trial court to declare the rights and obligations of the parties. See Ross v.Belden Park Co. (June 1, 1998), Stark App. No. 1996CA00429 ("the failure of the trial court to make findings of fact and conclusions of law as to every issue presented constitutes harmless error when the record, taken as a whole, along with the court's order provides an adequate basis to dispose of all the claims presented").
 {¶ 18} As to DeAscentis' contention that summary judgment was improperly granted, Civ. R. 56(C) states that summary judgment shall be rendered forthwith if: *Page 8 
 * * * [T]he pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *
 {¶ 19} Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 65-66. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280,292. Once the moving party meets its initial burden, the nonmovant must then produce competent evidence showing that there is a genuine issue for trial. Id. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359.
 {¶ 20} Appellate review of summary judgments is de novo. Koos v. Cent.Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588; MidwestSpecialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8. We stand in the shoes of the trial court and conduct an independent review of the record. *Page 9 
 {¶ 21} DeAscentis contends that the trial court erroneously applied the statute of frauds to the Sharon Woods claims. Margello moved for summary judgment upon the affirmative defense of the statute of frauds. The trial court found that the statute of frauds applied to the oral agreement between DeAscentis and Margello because it concerned the conveyance of real property and performance was not possible within one year.
 {¶ 22} Ohio's statute of frauds requires that no action shall be brought regarding an interest in or concerning lands unless the agreement is in writing and signed by the party to be charged. R.C. 1335.05. Nevertheless, DeAscentis claims that the statute of frauds is not implicated in the agreement because the essence of the agreement was to split profits and expenses related to real estate development projects. Only later, according to DeAscentis, did the parties agree to include condominium units as part of the profits they agreed to split.
 {¶ 23} DeAscentis' deposition testimony contradicts this assertion. Appellees have directed our attention to the deposition testimony of DeAscentis where DeAscentis relates a meeting the parties had regarding the agreement to build SW 1. The following colloquy took place:
 Q. And what did you guys talk about that day?
 A. Basically I sat down in front of him and asked him what the agreement was, and he said or he told me, he said, same as John Shumate's, he said, we're 50/50 partners. We keep five units and we split the profit.
(DeAscentis Depo., at 28-29.)
 {¶ 24} And at page 40-41:
 Q. So for Sharon Woods Senior Village 1, you knew at least under the terms of the agreement described to you by Mr. *Page 10 
 Margello that at some point title to five of the condominium units would be given to you; is that correct?
 * * *
 A. Yes.
 Q. So according to you under this agreement made between you and Mr. Margello, at some point you knew that to carry out this agreement Community Builders was going to have to deed over title to five condominiums to you?
 A. Yes.
 And later with respect to SW 2, at page 57-58,
 Q. For example, in 1992, now it's been 18 months or so since the project was built and probably another year or so since all the condos were sold, during that period of time did you ask Vince about giving you title to the five condominiums at Sharon Woods Senior Village?
 A. Yes.
 Q. What did he say at that point?
 A. He said — about 1992, the beginning of 1992 he had had some sales and he told me we was going to build another village and that he was going to carry them over for me and him into the next village.
 Q. Carry over what?
 A. All our units. He used the excuse that he was using the units' income to pay the overhead.
 Q. You're talking about the ten that were —
 A. The ten that we had. I asked him about the income, and he said, Jim, we're going to do another village on the other street. He said, we're going to keep the ten in there now so we can take the income and pay the telephone bill, pay everything. He said, then when you get done with the ten — or get down with the next building, we'll split them and you take ten units and I'll take ten units. *Page 11 
 And at page 59-60:
 Q. From what you're telling me, Jimmy, it sounds as if this discussion you had with Vince in early 1992 would have been the first time he brought up to you the idea of a second Sharon Woods Senior Village.
 A. Yes.
 Q. Did he ask you to work on that project?
 A. He told me when I asked him, because he wanted to keep my units and didn't want to pay me, we had — he told me, we have the same agreement, Jimmy, as we do on 1. He said, 50/50 partners. He said, this will be the end of it. He said, we'll build no more villages after that. He says, I'm done in the senior citizens village business. He says, I'm going to settle up at the end.
 Q. He told you you would divide up ten units at the end —
 A. Yes.
 Q. — Is that correct?
 A. There would be 20. He would get 10 and I would get 10.
 Q. So you understood Vince to be telling you during this conversation in early 1992 that when you finished Sharon Woods Senior Village 2 you would divide up the profits from both Sharon Woods Senior Village 1 and Sharon Woods Senior Village 2, whatever those profits might be, and in addition, the two of you would divide up 20 units, ten each from the two phases. You would get five from phase 1, five from phase 2, and he would get five from phase 1 and five from phase 2. Is that what you're telling me?
 A. Right. *Page 12 
On the other hand, Margello testified at one point in his deposition that DeAscentis was to receive cash compensation, and only later did the condominiums enter into the discussions. At page 63 of Margello's deposition he said:
 Q. When [DeAscentis] came to you and asked you for a job, you said, yes, I will employ you; correct?
 A. Correct.
 Q. And then you had a discussion with him about a monetary amount of money that he would receive for performing this job; correct?
 A. Yes.
 Q. And you decided on a figure; correct?
 A. Correct.
 Q. Okay, and my further understanding of your testimony is that it changed from only money to money plus condominiums.
 A. Correct.
And on page 66 with respect to SW 2:
 Q. And you're saying you had another discussion with Jim DeAscentis; correct?
 A. Correct.
 Q. For Number II?
 A. Correct. * * * Q. And this was for monetary compensation as opposed to the transfer of condominiums. Is that what you're saying?
 A. Everything was always discussed in monetary, but then there was a value set on the condominiums and the *Page 13 
condominiums came into play. And I can't remember exactly how, but they were received as compensation for the monetary value that was agreed upon.
 {¶ 25} Viewing the evidence most strongly in favor of DeAscentis, we must assume for summary judgment purposes that an oral agreement was formed for the development of real property, in which the parties agreed to split expenses and profits and, at some point, this included transfer of title to ten condominium units to DeAscentis and ten to Margello. When an essential component of a partnership agreement is the conveyance of real property from one partner to another, either directly or through the partnership, and the alleged breach of the agreement is the failure of a party to convey the property, the statute of frauds is implicated, and there must be a writing signed by the party to be charged.Gunsorek v. Heartland Bank (1997), 124 Ohio App.3d 735, 744-745. Here, there is a genuine issue of material fact as to whether transfer of title was an essential part of the agreement. DeAscentis' breach of contract claim is based largely upon Margello's failure to convey cash and/or title to five condominium units to DeAscentis. This type of agreement may or may not be one regarding an interest in or concerning lands depending upon what the trier of fact determines to be the essential parts of the agreement.
 {¶ 26} Assuming the statute of frauds applies to the agreement, DeAscentis has argued that he fully performed his obligations under the agreement by supervising construction of the projects until they were completed, and therefore his performance removes the agreement from the statute of frauds. "An agreement will be removed from operation of the Statute of Frauds only through the doctrines of partial performance and promissory estoppel." Id. at 740. More specifically, a party seeking to invoke the doctrine *Page 14 
must establish that he has performed acts in exclusive reliance on the oral contract, and that such acts have changed his position to his prejudice. Spectrum Benefit Options, Inc. v. Med. Mut. of Ohio,174 Ohio App.3d 29, 45, 2007-Ohio-5562, at ¶ 43. In cases involving the sale or lease of real property, courts have required acts such as possession, payment of consideration, and improvements on the land in order to find part performance. Clements v. Mayhew, Greene App. No. 2006 CA 126,2007-Ohio-3700, at ¶ 58.
 {¶ 27} Here, if we construe the agreement in the way Margello has suggested, it is appropriate to characterize DeAscentis' role as project superintendent and being in the nature of a personal services contract. Under those circumstances, transfer of title is part of the compensation the parties eventually agreed upon. In that situation, full performance of DeAscentis' obligations under the contract bars the raising of a statute of frauds defense. ID Agency, Inc v. Community Mut. Ins.Co. (July 14, 1994), Cuyahoga App. No. 65298. The trial court has acknowledged that issues of fact exist regarding the nature of the agreement(s) and the terms. Because these factual issues are potentially outcome determinative, particularly as to the statute of frauds defense, we must reverse the decision of the trial court granting summary judgment to appellees.
 {¶ 28} The trial court also found that the agreements were not capable of performance within one year, but only said "[i]n this case, by the very nature of the agreement, performance within one year was not possible." (Oct. 20, 2003 Trial Court Decision, at 7.) We disagree.
 {¶ 29} The relevant portion of Ohio's Statute of Frauds provides as follows: *Page 15 
 No action shall be brought whereby to charge the defendant * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement * * * is in writing and signed by the party to be charged * * *
The Supreme Court of Ohio has held that:
 For over a century, the "not to be performed within one year" provision of the Statute of Frauds, in Ohio and elsewhere, has been given a literal and narrow construction. The provision applies only to agreements which, by their terms, cannot be fully performed within a year, and not to agreements which may possibly be performed within a year.
Sherman v. Haines (1995), 73 Ohio St.3d 125, 127.
 {¶ 30} Here, as discussed above, genuine issues of material fact exist such as when payment was to be made or when the projects were completed. As such, we cannot determine what in "the very nature" of the agreements makes performance within one year impossible. Until the trial court expands upon the declaration of the rights of the parties, we cannot affirm summary judgment for appellees on this basis. The second assignment of error is sustained.
 {¶ 31} Having found that summary judgment is inappropriate on the basis of the statute of frauds defense, we must turn to appellees' cross-assignment of error which asserts that they are entitled to summary judgment based upon the statute of limitations.
 {¶ 32} Margello asserts that all of DeAscentis' claims are barred by the statute of limitations. This case was filed on January 3, 2001 and was treated as a re-filing of claims originally filed on March 7, 2000 in case No. 00CVH-03-2047. The claims asserted by DeAscentis included breach of contract, unjust enrichment, breach of fiduciary duty, conversion, fraud, and promissory estoppel. These claims have differing *Page 16 
statutes of limitations. For example, breach of an oral contract has a six year statute of limitations. R.C. 2305.07. Breach of fiduciary duty has a four year statute of limitations. R.C. 2305.09. Application of a statute of limitations is a mixed question of law and fact. Cyrus v.Henes (1993), 89 Ohio App.3d 172, 175, reversed on other grounds (1994),70 Ohio St.3d 640. "Determination of when a plaintiff's cause of action accrues is to be decided by the factfinder." Phelps v. Lengyel (N.D.Ohio 2002), 237 F.Supp.2d 829, 838. Only in the absence of a factual dispute, is application of a statute of limitations a question of law. Bell v.Ohio St. Bd. of Trustees, Franklin App. No. 06AP-1174, 2007-Ohio-2790, at ¶ 21.
 {¶ 33} Here, after a review of the record, we find that the parties disagree as to when the projects were completed, when, or if, Margello paid DeAscentis in cash at various times, and when DeAscentis learned that his interests were impaired. In sum, material facts remain in dispute as to when the various statutes of limitations began to run on the various claims. Accordingly, summary judgment on the basis of a statute of limitations defense is not ripe for review by this appellate court. The cross-assignment of error is not well-taken.
 {¶ 34} Finally, in his third assignment of error, DeAscentis raises the issue of whether the trial court erred by denying certain discovery and by denying amendment of the complaint to add a claim for quantum meruit.
 {¶ 35} The discovery process falls under the trial court's broad discretion. State ex rel. Grandview Hosp. and Med. Ctr v. Gorman (1990),51 Ohio St.3d 94. Here, the original trial judge conducted an in-camera review of discovery materials, including business records and tax returns and ordered that some be produced. The successor *Page 17 
trial judge declined to revisit the issue. Based upon the extensive review conducted by the trial court, we find no abuse of discretion in the trial court's decision to deny DeAscentis' request.
 {¶ 36} The motion to add a claim for quantum meruit was not filed until the parties had been in litigation for six and one-half years. The trial court found that it was prejudicial to appellees.
 {¶ 37} Since "`the language of Civ. R. 15(A) favors a liberal amendment policy[,] * * * a motion for leave to amend should be granted absent a finding of bad faith, undue delay or undue prejudice to the opposing party.' Prejudice to an opposing party is the most critical factor to be considered in determining whether to grant leave to amend. Timeliness of the request is another factor to consider, but delay, in itself, should not operate to preclude an amendment." Hoskinson v. Lambert, Licking App. No. 06 CA 037, 2006-Ohio-6940, at ¶ 32 (citations omitted). Leave to file an amended complaint lies in the trial court's sound discretion, and in order to find an abuse of that discretion, an appellate court must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable. Id. at ¶ 33. See, also, Bugh v. GraftonCorrectional Inst., Franklin App. No. 06AP-454, 2006-Ohio-6641, at ¶ 18.
 {¶ 38} DeAscentis already had a claim for unjust enrichment pending before the trial court. The equitable claims of unjust enrichment and quantum meruit are closely related, and the essential elements of recovery are the same. Turturice v. AEP Energy Servs., Inc., Franklin App. No. 06AP-1214, 2008-Ohio-1835, at ¶ 32. Quantum meruit has been defined as an equitable doctrine based upon the principle that one should not be unjustly enriched at the expense of another, to be awarded when one party confers a *Page 18 
benefit upon another without receiving just compensation for the reasonable value of services rendered. Id. at ¶ 31. In order to prevail on a claim for unjust enrichment, a party must show that: (1) a benefit was conferred by him to another, (2) the other party had knowledge of the benefit conferred, and (3) the other party has retained the benefit under circumstances where it would be unjust to do so without payment. Id. at ¶ 24.
 {¶ 39} Despite the delay in requesting the amendment, and due to the overlapping factual nature of these equitable two claims, we cannot find that any prejudice to appellees would ensue as a result of allowing DeAscentis to add a claim of quantum meruit to his complaint as an additional alternative to his breach of contract claim. The third assignment of error is sustained in part and overruled in part.
 {¶ 40} Based on the foregoing, we overrule DeAscentis' first assignment of error, sustain the second assignment of error, sustain in part and overrule in part the third assignment of error, and overrule appellees' cross-assignment of error. The judgment of the Franklin County Court of Common Pleas is reversed, the trial court's ruling regarding discovery is affirmed, the denial of the motion to add a claim is reversed, and the matter is remanded for further proceedings in accordance with this opinion.
Judgment affirmed in part and reversed in part; remanded.
FRENCH and McFARLAND, JJ., concur.
McFARLAND, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District. *Page 1